ROBERT D. EASSA, Bar No. 107970
REassa@browneassa.com
ANDREW K. MURPHY, Bar No. 258102
AMurphy@browneassa.com
CAMERON J. HOYLER, Bar No. 273234
CHoyler@browneassa.com
**BROWN EASSA & MCLEOD, LLP**
1999 Harrison Street, Suite 1800
Oakland, California  94612-3520
Telephone:    510.444.3131
Facsimile:     510.839.7940

Attorneys for Defendants
CHEVRON CORPORATION,
CHEVRON U.S.A. INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **JOSEPH KRUZICH,**<br><br>          Plaintiff,<br><br>v.<br><br>**CHEVRON CORPORATION,**<br>**CHEVRON U.S.A. INC.,**<br><br>          Defendants. | Case No. C 11-04488 EMC<br><br>**OPPOSITION TO PETITION TO COMPEL ARBITRATION**<br><br>Date: November 4, 2011<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor |

## I.

## INTRODUCTION

Plaintiff's petition to arbitrate must be denied. Plaintiff/Petitioner Joseph Kruzich's ("Plaintiff" or "Kruzich") attempt to apply Defendant/Respondent Chevron Corporation and Chevron U.S.A. Inc.'s ("Chevron") internal Human Resources Policy 344, entitled "Steps To Employee Problem Solution Process" (hereafter, "STEPS") as authority to compel arbitration fails for several reasons.

First, STEPS is not a contract. It was neither referenced nor incorporated into Kruzich's employment agreement with Chevron. STEPS is an internal procedure that Chevron utilizes in an

1999 Harrison Street,
Suite 1800
Oakland, California
94612-3520

OPPOSITION TO PETITION TO COMPEL ARBITRATION
C 11-04488 EMC

attempt to amicably and internally resolve employee disputes. Second, STEPS is not binding on employees or Chevron. Third, Chevron and Chevron alone is vested with sole discretion to determine whether a particular issue involves a legally protected right, entitling arbitration to be used under its internal policy.

Kruzich's Petition is a transparent attempt to force Chevron to finance his lawsuit. Chevron already paid for the mediation of this dispute on September 29, 2009, in an effort to resolve this matter and to allow both parties to move forward. Chevron also offered Plaintiff binding arbitration, which he rejected.

Kruzich's emotional and frivolous Petition (characterizing Chevron's conduct in denying arbitration as "inexplicable," "indefensible," "ludicrous," "outrageous," and "outlandish") must be denied. No amount of adjectives can alter the facts of this case. Kruzich was terminated because he performed very poorly. Moreover, Kruzich's employment with Chevron did not involve any contract which mandated arbitration. And, even if Kruzich's claims were covered by STEPS, Chevron properly exercised its discretion pursuant to the terms of STEPS to determine (as the EEOC did as well) that a thorough investigation revealed no evidence to support Kruzich's claims that he was harassed, transferred, relieved of his duties, discharged, or denied relocation expenses based on his national origin in violation of Title VII, or for engaging in protected activity.

## II.

## STATEMENT OF FACTS

Chevron hired Plaintiff to be the manager of its "Policy, Government and Public Affairs" department for Chevron's work in Chengdu, China. (Declaration of Andrew K. Murphy ("Murphy Decl."), ¶ 3.) This work was part of a venture with PetroChina to develop a natural gas field. (Murphy Decl., ¶ 2.)

Shortly after Plaintiff began work for Chevron in China, it became apparent that Plaintiff was incapable of performing his job. (Murphy Decl., ¶ 4.) Chevron hired Plaintiff with the expectation that he would develop and facilitate ties with the local government officials and personnel. Instead, to Chevron's detriment, Plaintiff offended and upset individuals from both

- 2 -

Chevron and PetroChina. Moreover, Plaintiff acted in an aggressive and demeaning manner toward his co-workers, which forced Chevron to terminate his employment.

Immediately following notification of his termination, Plaintiff demanded that Chevron pay him $1,325,000.00, provide "90 days of housing at a five star hotel in Beijing" in addition to $100 per day for meals, and, for the first time, raised various unsubstantiated claims. To date, there has been no evidence to support any of Plaintiff's allegations.

Plaintiff demanded to arbitrate his issues pursuant to Chevron's "Steps to Employee Solution" ("STEPS") program. The STEPS program is Chevron's internal dispute resolution policy. (Murphy Decl., ¶ 7.) The STEPS program is not a contract between Chevron and its employees which requires arbitration. (*Id.*) The arbitration provision of the STEPS program, which is financed by Chevron, states that it is only applicable to issues that Chevron deems to be legally protected rights. (*Id.*) It specifically does not concern complaints regarding an employee's performance. (*Id.*)

The STEPS program is not a mandatory program. When used, it can consist of up to four "steps" to attempt to resolve a dispute before instigating litigation. (Murphy Decl., ¶ 7.) The first step requests that the employee discuss the issue with his/her supervisor at Chevron. (*Id.*) The second step requests that the employee undergo discussion with the supervisor with the assistance of an unbiased company representative. (*Id.*) The third step is mediation and is undertaken at the company's discretion, just like the fourth step which is arbitration. (*Id.*)

Mediation and arbitration are limited to what the company determines to be "legally protected rights." (Murphy Decl., ¶ 7.) Specifically, STEPS states that "the Corporate or appropriate Operating Company Law Department will make the determination if an issue involves a legally protected right." (*Id.*) The STEPS program explains that mediation and arbitration are not used to resolve every dispute, and provides:

> For example, a complaint about an evaluation under the Performance Management Process (PMP) or other records documenting employee performance or a work assignment based on something other than discrimination could be resolved in Steps One and Two but could not proceed to Steps Three and Four.

(Murphy Decl., ¶ 7.)

- 3 -

OPPOSITION TO PETITION TO COMPEL ARBITRATION
C 11-04488 EMC

On September 29, 2009, Chevron attended a mediation session to resolve the dispute. (Murphy Decl., ¶ 8.) However, the parties were unable to reach a resolution. (*Id.*) Subsequently, on or around November 5, 2009, Plaintiff's counsel submitted a demand to arbitrate. Chevron, using its discretion, and based on the information it had, determined that Plaintiff's claims were performance-related and denied the request to arbitrate.

Thereafter, Plaintiff's counsel filed a Complaint with the Equal Employment Opportunity Commission ("EEOC"). (Murphy Decl., ¶ 9.) The EEOC found no evidence of unlawful conduct pertaining to any of Plaintiff's claims that he was harassed, transferred, relieved of his duties, discharged, or denied relocation expenses based on his national origin or for engaging in protected activity. (Murphy Decl., ¶ 10.) During their investigation, the EEOC field officer recommended that Chevron and Plaintiff enter into binding arbitration, which Chevron was willing to do. (Murphy Decl., ¶ 9.) Plaintiff rejected the EEOC's recommendation. As such, it is disingenuous for Plaintiff to now argue that he has been left with no alternative but to petition this Court to compel arbitration.

On June 15, 2011, the EEOC issued its finding. The EEOC did not find any evidence supporting Plaintiff's allegations, and issued a determination that:

> Based upon the investigation, I am unable to conclude that Charging Party [Plaintiff] was harassed, transferred, relieved of his duties, discharged, or denied relocation expenses based on his national origin in violation of Title VII. Based upon the investigation, I am also unable to conclude that Charging Party was transferred, relieved of his duties, discharged, or denied relocation expenses for engaging in protected activity.

(Murphy Decl., ¶ 10.)

However, even though the EEOC did not find grounds for discrimination, it stated that Plaintiff could have a claim for retaliation simply by being denied arbitration. (Murphy Decl., ¶ 10.) It is noteworthy that the EEOC elected not to pursue any claim on behalf of Plaintiff, and has taken no action whatsoever since making this determination.

Plaintiff has still refused to engage in binding arbitration. There has been an EEOC determination that he was not "harassed, transferred, relieved of his duties, discharged, or denied relocation expenses based on his national origin in violation of Title VII," or "for engaging in

- 4 -

protected activity." Ignoring the EEOC's findings regarding his substantive claims, Plaintiff would still petition this Court to force Chevron to arbitrate his claims without any contract or legal right to compel an arbitration.

## III.

## LEGAL AUTHORITIES AND ARGUMENT

Under the Federal Arbitration Act ("FAA"), 9 U.S.C.A. section 1, *et seq.*, an arbitration clause will only be upheld if an agreement to arbitrate actually exists. "Arbitration is a matter of contract and a party cannot be required to submit to arbitrate any dispute which he has not agreed to so submit." (*Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994), citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).) Here, Plaintiff cannot compel arbitration because no agreement to arbitrate actually exists.

The application of Plaintiff's own framework for determining this issue demonstrates that Plaintiff's petition must be denied. As Plaintiff notes, this Court must first determine whether the parties entered into a valid and enforceable written agreement to arbitrate. (*See Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996). Here, the parties did not. Plaintiff directs this Court to an unpublished decision, *Hicks v. Macy's Dep't Stores, Inc.*, 2006 U.S. Dist. LEXIS 68268, *8 (N.D. Cal. Sept. 11, 2006), for the proposition that "a party may be bound by an agreement to arbitrate even absent a signature."

*Hicks* involved an opt-out procedure, and is inapposite. There, the plaintiff was a Macy's employee. (*Id.* at *1.) Macy's implemented a dispute resolution program called SIS. (*Id.*) "For two weeks in September 2003, Macy's [] held daily meetings for its employees about SIS." (*Id.*) "Macy's gave all employees two initial documents explaining SIS: a letter and a brochure." (*Id.*) The brochure stated that if "you decide you would like to be excluded from participating in and receiving the benefits of Step 4, we will ask you to tell us in writing by completing a form that will be mailed to all employees' homes this Fall." (*Id.*) The brochure referred to Step 4 as binding arbitration. (*Id.*) Macy's posted in employee areas posters diagraming each SIS step,

- 5 -

including Step 4, binding arbitration. (*Id.*) Macy's sent all employees a packet which included the SIS Plan Document, an Early Dispute Resolution Program Election Form, and a pre-addressed postage-paid return envelope. (*Id.*) The Form clearly stated that the employee must return it by October 31, 2003 to opt out of arbitration, and the plaintiff did not return the opt out form. (*Id.*) The *Hicks* court held that Hicks agreed to arbitration by failing to "opt out" of the arbitration program on at least two occasions. (*Id.*)

Here, there was no such presentation to Plaintiff creating circumstances whereby an unsigned internal human resources policy could be construed as creating a valid and enforceable agreement to arbitrate. Moreover, even if the parties did enter into such an agreement, Plaintiff also notes that his petition is based on the fact that "Section 4 of the FAA permits 'a party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration to petition any United States District Court…for an order directing that…arbitration proceed in the manner provided for in the [arbitration] agreement.'" (9 U.S.C. Sec. 4.)

In this case, arbitration is not entitled as a matter of right. This is because Chevron retained discretion under STEPS to determine whether Plaintiff's claims involved legally protected rights. Chevron exercised its valid discretion and determined that there was no evidence to support Plaintiff's baseless claims. "When it appears that a claim of arbitrability… is frivolous or patently baseless it would be an abuse of the arbitration process and would defeat the contractual intent of the parties to compel arbitration." (*American Stores Co. v. Johnston* 171 F.Supp. 275 (D.C.N.Y. 1959).)

Even if STEPS was found to be a valid and enforceable agreement to arbitrate, as Plaintiff admits, a court must still determine whether the agreement encompasses the dispute at issue. (*See Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).) Here, the dispute at issue concerned a Chevron employee at a non-U.S. location. The Chevron internal policy expressly makes Chevron's application of STEPS permissive but not mandatory as a matter of right with respect to such disputes. Plaintiff cannot now compel Chevron to exercise Chevron's own discretion in the manner dictated by Plaintiff.

- 6 -

OPPOSITION TO PETITION TO COMPEL ARBITRATION
C 11-04488 EMC

A.  **The STEPS Policy Did Not Create a Contract to Arbitrate**

Plaintiff cannot compel arbitration because there is no contract between Chevron and Plaintiff to arbitrate. First, as stated in Plaintiff's petition, Plaintiff was hired by Chevron and worked exclusively in China. (Plaintiff's Petition, p. 2.) The STEPS program clearly states in paragraph two that "Non-U.S. company locations <u>may</u> utilize this policy, subject to the legal requirements of their host country." (Murphy Decl., ¶ 8; emphasis added.) Federal and California law provide that the word "may" is permissive language, as opposed to mandatory language such as "shall." "In contracts and private affairs, the word 'may' is permissive and discretionary." (*U.S. Sugar Equalization Bd. v. P. De Ronde & Co.*, 7 F.2d 981, 986 (3d Cir. 1925); See also, *Sheyko v. Saenz* 112 Cal. App. 4th 675, 680 (2003) [holding that 'shall' is mandatory and 'may' is permissive].) Therefore, as the language in STEPS is permissive, and not mandatory, there is no contract between Chevron and Plaintiff such that Plaintiff can force arbitration.

Second, the STEPS program specifically provides that Chevron does not consent to arbitrate any dispute. The STEPS program states that arbitration is limited to "legally protected rights." (Murphy Decl., ¶ 7.) Critically, the STEPS program states that, "<u>the Corporate or appropriate Operating Company Law Department will make the determination if an issue involves a legally protected right</u>." (Murphy Decl., ¶ 7; emphasis added.) As Chevron finances the expenses of the arbitration—even if the employee does not agree with the results of the arbitration and renders it non-binding—Chevron maintains the right to determine whether the parties can arbitrate.

After a thorough investigation, Chevron determined that there was no evidence to support Kruzich's claims that he was harassed or discriminated against on the basis of his national origin, or for engaging in any other protected activity related to the allegations raised in his demand for money from Chevron after receiving his notice of termination. This is the exact same conclusion that was reached by the EEOC after its own lengthy and thorough investigation. As there is no contract for Chevron to engage in mediation or arbitration, a decision to engage in mediation does not thereafter give rise to a right to arbitration. Moreover, after the mediation on September 29,

- 7 -

2009, it became even clearer to Chevron that there was no basis for Plaintiff's allegations, and that his baseless allegations did not involve legally protected rights.

## IV.

## CONCLUSION

For all of the foregoing reasons, Chevron respectfully requests that Plaintiff's petition to compel arbitration be denied.

Respectfully Submitted,

Dated: October 4, 2011

**BROWN EASSA & MCLEOD, LLP**

By: _____
ROBERT D. EASSA
CAMERON J. HOYLER
ANDREW K. MURPHY
Attorneys for Defendants
CHEVRON CORPORATION and
CHEVRON U.S.A. INC.

- 8 -

OPPOSITION TO PETITION TO COMPEL ARBITRATION
C 11-04488 EMC

1999 HARRISON STREET,
SUITE 1800
OAKLAND, CALIFORNIA
94612-3520