1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8 | JOSEPH KRUZICH,                                      No. C-11-4488 EMC

9 |              Plaintiff,

10 | v.                                                    **ORDER GRANTING PLAINTIFF'S PETITION TO COMPEL ARBITRATION**

11 | CHEVRON CORPORATION, *et al.*,

12 |              Defendants.                              **(Docket No. 6)**

13 | _____/

14

15        Plaintiff's petition to compel arbitration came on for hearing before the Court on November

16 | 7, 2011.  Docket No. 6.  For the reasons set forth below, the Court **GRANTS** Plaintiff's petition to

17 | compel arbitration.

18                    I.    FACTUAL & PROCEDURAL BACKGROUND

19        Plaintiff Joseph Kruzich was hired by Defendants Chevron Corporation and/or Chevron

20 | U.S.A., Inc. to manage Defendants' Policy, Government and Public Affairs department in China.

21 | Docket No. 3 ¶¶ 3, 4 ("Kruzich Decl.").[1]  When Plaintiff was hired, Defendants had in place HR

22 | Policy 344, which required employees to use a dispute resolution program called "STEPS" (Steps to

23 | Employee Problem Solving) before proceeding to litigation.  Docket No. 3, Exh. A at 2 ("HR

24 | Policy").

25        STEPS consists of four steps.  Steps One and Two are voluntary, while Steps Three and Four

26 | must be utilized before an employee may proceed with a lawsuit.  HR Policy at 2-3.  Step Three

27 | _____

28        [1]  The November 25, 2009 and December 7, 2009 letters from Chevron U.S.A., Inc. denying
arbitration indicates Plaintiff was hired by Chevron U.S.A., Inc.

**United States District Court**
For the Northern District of California

1   requires an employee to submit the dispute to mediation, and is required before an employee may

2   proceed to Step Four.  HR Policy at 2.  Step Four consists of arbitration, which is binding on the

3   company and employee if the employee accepts the arbitrator's decision.  HR Policy at 2.  If the

4   employee is not satisfied with the arbitrator's decision, the employee is free to seek other legal

5   remedies.  HR Policy at 2-3.

6        HR Policy 344 is limited in its scope and applicability.  First, HR Policy 344 does not apply

7   to all employees:

8        It applies to all U.S. company employees (including Casual, Co-op,
         Seasonal and Part-time employees) who are not represented by a
9        union.  The process contained in this policy also applies to non-
         represented former employees as long as the matter of dispute
10       occurred while they were employed by the company.  Non-U.S.
         company locations may utilize this policy, subject to the legal
11       requirements of their host country.

12  HR Policy at 1.  Second, Steps Three and Four apply only to employee disputes involving "legally

13  protected rights," or those that can be asserted in a court of law.  HR Policy at 3.  HR Policy 344

14  lists examples of legally protected rights, including: (1) claims for discrimination, retaliation, or

15  harassment; and (2) claims relating to employment or termination of employment, such as wrongful

16  discharge, breach of the covenant of good faith and fair dealing, and violation of public policy.  HR

17  Policy at 3.  In contrast, complaints about *e.g.*, employee evaluations or work assignments are not

18  "legally protected rights" subject to Steps Three and Four.  HR Policy at 3.  Defendants' Corporate

19  or the appropriate Operating Company Law Department is responsible for determining whether an

20  issue involves a legally protected right.  HR Policy at 3.  Step Three thus requires that an employee

21  submit a Mediation Request Form, which is then forwarded to "the appropriate Operating Company

22  or Corporate Law Department for determining if the complaint is eligible for Step Three."  HR

23  Policy at 4.  In contrast, Step Four does not state that Defendants will determine whether the

24  complaint is eligible for arbitration.

25       In the instant case, Plaintiff was hired in the United States in December 2008.  Kruzich Decl.

26  ¶ 2; Docket No. 23 ¶ 2 ("Supp. Kruzich Decl.").  Plaintiff was hired by either or both Defendants

27  (each of whom are U.S. companies) to be the Manager for Defendants' Policy, Government and

28  Public Affairs department in China, which was the department responsible for managing relations

between the Defendants' China project and local communities and government officials.  Kruzich Decl. ¶ 3.  Upon Plaintiff's hiring, Plaintiff took his pre-employment physical exam had orientation meetings at Defendants' headquarters in San Ramon, California.  Supp. Kruzich Decl. ¶ 2.  Plaintiff was also given a copy of HR Policy 344, and was informed on at least two occasions by Defendants' Human Resources managers that his employment was subject to HR Policy 344.  Kruzich Decl. ¶ 2; Supp. Kruzich Decl. ¶ 3.  Based on the policy language and the managers' representations, Plaintiff believed that both he and Defendants were required to use the STEPS program if an employment-related dispute arose.  Supp. Kruzich Decl. ¶ 3.  Although Plaintiff worked in China on an expatriate assignment, Plaintiff remained on Defendants' United States payroll, and had United States income tax and other standard federal withholdings deducted from his paychecks.  Supp. Kruzich Decl. ¶ 2.

        In June 2009, Plaintiff was taken off the China project and it became apparent that he would be terminated if he did not find another position with Defendants.  Kruzich Decl. ¶ 4; Docket No. 20, Exh. A at 1 (giving Plaintiff until August 31 "to find another position, either within Chevron or outside of it.").  Plaintiff was again informed by a Human Resources manager that due to his expatriate status, he would have to use the STEPS process if he had an employment dispute.  Supp. Kruzich Decl. ¶ 3.  In August 2009, Defendants terminated Plaintiff's employment.  Kruzich Decl. P 4.  Plaintiff contended that he was terminated on the demands of Defendants' China partner, with whom he had clashed regarding alleged illegal conduct.  Kruzich Decl. ¶ 4.  Plaintiff alleges that he complained to Defendants about the China partner's illegal and improper conduct, including violations of the Foreign Corrupt Practices Act, violations of Chinese law, failure to comply with international resettlement standards, and gender discrimination.  Kruzich Decl. ¶¶ 4; 5.  Defendants contend that Plaintiff's role was to create strong ties with Defendants' China partner, and that Plaintiff's failure to do so resulted in his termination.  Docket No. 20-1 ¶ 5 ("Murphy Decl.").  Kruzich Decl. ¶ 4.  Upon his termination, Plaintiff asserted claims against Defendants for wrongful termination in violation of public policy, discrimination, retaliation for objecting to discrimination, fraud, and breach of the covenant of good faith and fair dealing.  Petition ¶ 10.

        Pursuant to HR Policy 344, Plaintiff asked Defendants if they wished to mediate the dispute.  Docket No. 4 ¶ 2 ("Palefsky Decl.").  Defendants allegedly responded that Defendants would

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    mediate under the STEPS program, and the parties participated in a mediation session in September

2    2009.  Palefsky Decl. ¶¶ 2, 3.  When the mediation was unsuccessful, Plaintiff requested arbitration

3    under Step Four.  Petition ¶ 12.  Defendants denied Plaintiff's arbitration request, on the grounds

4    that Defendants had "determined that none of [Plaintiff's] claims are legally viable or arbitrable

5    under Chevron's STEPs policy."  Docket No. 4, Exh. F ("Denial of Arbitration Demand").

6        Plaintiff then filed a Complaint with the Equal Employment Opportunity Commission

7    ("EEOC").  Compl. ¶ 14.  During the EEOC's investigation, Plaintiff rejected Defendants' offer of

8    binding arbitration (not the non-binding arbitration specified by Step Four).  Murphy Decl. ¶ 8 .  The

9    EEOC issued a determination in June 2011, in which it stated that the EEOC could not conclude that

10    Plaintiff "was harassed, transferred, relieved of his duties, discharged, or denied relocation expenses

11    based on his national origin in violation of Title VII [or] for engaging in protected activity."  Docket

12    No. 4, Exh. J at 1 ("EEOC Determination").  However, the EEOC did find that "there is reasonable

13    cause to believe that [Defendants] discriminated against [Plaintiff] for engaging in protected activity

14    when they denied [Plaintiff] arbitration."  EEOC Determination at 2.

15        Plaintiff now brings this petition to compel arbitration under Step Four of HR Policy 344.

16                       **II.**    **DISCUSSION**

17    A.      The Federal Arbitration Act

18        The central purpose of the Federal Arbitration Act ("FAA") "is to ensure that private

19    agreements to arbitrate are enforced according to their terms."  *Momot v. Mastro*, 652 F.3d 982, 986

20    (9th Cir. 2011).  A court shall issue an affirmative order to proceed in arbitration if the court is

21    satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in

22    issue."  9 U.S.C. § 4 (2006).  When deciding a petition to compel arbitration, the Court's role is

23    "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether

24    the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d

25    1126, 1130 (9th Cir. 2000).  If the making of the arbitration agreement or the failure to perform the

26    agreement is at issue, the court will adjudicate the issue.  9 U.S.C. § 4.

27        Generally, "arbitration is a matter of contract and a party cannot be required to submit to

28    arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 648 (1986).  At the same time, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Given this presumption in favor of arbitration, a court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc.*, 475 U.S. at 650; *see also Momot*, 652 F.3d at 987 ("Given the general presumption in favor of arbitration, one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter.").

B.    <u>Valid Arbitration Agreement</u>

To compel arbitration, the Court must find that a valid written and enforceable agreement exists between Plaintiff and Defendants.  A party's acceptance of an agreement to arbitrate may be express or implied in fact where "the employee's continued employment constitutes her acceptance of an agreement proposed by her employer."  *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000); *see also Asmus v. Pac. Bell*, 23 Cal 4th 1, 15 (2000) ("Just as employers must accept the employee's continued employment as consideration for the original contract terms, employees must be bound by amendment to those terms, with the availability of continuing employment serving as adequate consideration from the employer.").  In *Craig*, the defendant-employer established a four-step dispute resolution program and sent a memorandum to all employees explaining that all employees were bound by the program.  83 Cal. App. 4th at 419.  The memorandum stated that the program would govern all future employment-related disputes between the employer and employee. *Id.*  The court concluded that because the plaintiff had received the memorandum and continued to work for the company, "she thereby agreed to be bound by the terms of the Dispute Resolution Program, including its provision for binding arbitration."  *Id.* at 422.

The court in *Doubt v. NCR Corp.* likewise found that the plaintiff-employee agreed to be bound by an arbitration agreement by continuing to work for the defendant-employer.  C 09-05917 SBC, 2010 U.S. Dist. LEXIS 102484, at *10 (N.D. Cal. Sep. 13, 2010).  There, the defendant created an internal resolution dispute resolution program that included an agreement to arbitrate disputes arising during employment.  *Id.* at *2, 4.  The defendant sent all employees an e-mail

United States District Court

For the Northern District of California

1    explaining that they did not have to sign to accept the terms and conditions of the new policy, but

2    that acceptance would be demonstrated by continued employment or acceptance of employment-

3    related benefits. *Id.* at *3. Because the plaintiff continued his employment with the defendant after

4    receiving notice of the policy, the court found that the plaintiff had agreed to be bound and thus the

5    plaintiff and the defendant had entered into an arbitration agreement. *Id.* at *11

6            In the instant case, Plaintiff argues that HR Policy 344 was incorporated into his employment

7    agreement, and thus became a term and condition of his employment. Docket No. 2 at 3. Although

8    Defendants counter that HR Policy 344 is not binding on employees or Defendants, HR Policy 344

9    states that "[t]he company, however, *requires* that employees do use STEPS before proceeding to

10   litigation." HR Policy at 2 (emphasis added); *see also* Docket No. 4, Exh. H (Letter from

11   Defendants' attorney stating that "[t]he STEPS process is an internal conflict resolution procedure

12   which *requires* all Chevron U.S.A. Inc. ("Chevron") employees to attempt to resolve their disputes

13   internally prior to proceeding to litigation" (emphasis added)). HR Policy 344 also states that "[i]f

14   Steps Three and Four are not used, the company *will* request that legal proceedings be suspended

15   until Steps Three and Four are utilized." HR Policy at 3 (emphasis added). Like the internal dispute

16   resolution policy in *Doubt*, HR Policy 344 specifically states that "[a]n employee's continued

17   employment in Chevron will mean they agree to use STEPS." HR Policy at 2. Thus, because HR

18   Policy 344 states that employment constitutes an agreement to use STEPS, and that STEPS is

19   binding on employees prior to bringing suit, the Court finds that HR Policy 344 constitutes a valid

20   and enforceable agreement to arbitrate. Moreover, the wording of HR Policy 344 imposes a mutual

21   obligation upon both Chevron and its employees to comply with STEPS.

22   C.   Applicability of Arbitration Agreement to Dispute at Issue

23           Because the Court finds that HR Policy 344 is a valid agreement, the Court must determine

24   "whether the agreement encompasses the dispute at issue" in this case. *Chiron Corp.*, 207 F.3d at

25   1130.

26           1.   Applicability of Arbitration Agreement to Plaintiff

27           First, the Court must determine if HR Policy 344 applies to Plaintiff. HR Policy 344 states

28   that STEPS "applies to all U.S. company employees . . . who are not represented by a union. . . .

United States District Court

For the Northern District of California

Non-U.S. company locations may utilize this policy, subject to the legal requirements of their host country." HR Policy at 1. Defendants argue that Plaintiff was hired to work exclusively in China, a non-U.S. location, and thus STEPS is permissive as applied to Plaintiff. Docket No. 20 at 7 ("Opp."). Plaintiff counters that Defendants treated Plaintiff as an employee of Chevron, U.S.A., including placing Plaintiff on the United States payroll. Supp. Kruzich Decl. ¶ 2. Thus, STEPS is mandatory as applied to Plaintiff because Plaintiff is a U.S. company employee, even if stationed overseas. Docket No. 10 at 10 ("Reply").

"It is a settled rule that in case of uncertainty in a contract it is construed most strongly against the party who caused the uncertainty to exist – the party drafting the instrument." *Taylor v. J. B. Hill Co.*, 31 Cal. 2d 373, 374 (1948). Defendants admitted at the hearing on this matter that they have overseas subsidiaries. HR Policy 344 can be reasonably read as mandatory as to non-union employees who are employed by Chevron, U.S.A., and permissive as to non-union employees who are employed by Defendants' overseas subsidiaries. Defendants themselves have described STEPS as "an internal conflict procedure which requires all *Chevron U.S.A. Inc.* ("Chevron") employees to attempt to resolve their disputes internally prior to proceeding to litigation." Denial of Arbitration Demand (emphasis added). The liberal wording of HR Policy 344 can be reasonably construed to apply to Plaintiff, an employee of Chevron U.S.A., Inc. Under *Taylor*, any ambiguity is resolved against Chevron. Moreover, under *Moses H. Cone Mem'l Hosp.*, doubts are resolved in favor of arbitration.

This interpretation of the contract is further supported by Defendants' post contract conduct. "The acts of the parties under the contract afford one of the most reliable means of arriving at their intention; and, while not conclusive, the construction thus given to a contract by the parties before any controversy has arisen as to its meaning will, when reasonable, be adopted and enforced by the courts." *Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744, 753 (1960) (citation omitted). Prior to Defendants' opposition to this petition, Defendants consistently applied HR Policy 344 and STEPS to Plaintiff. When Plaintiff was hired, he was informed by Human Resources managers that HR Policy 344 applied to his employment. Supp. Kruzich Decl. ¶ 3. During his employment, he was informed by a Director of Human Resources that STEPS applied to him. Supp. Kruzich Decl. ¶ 3.

When disputes arose over Plaintiff's imminent termination in June 2009, Plaintiff was again informed by a Human Resources manager that due to his expatriate status, he was covered by STEPS and thus obligated to use the STEPS process.  Supp. Kruzich Decl. ¶ 3.  After Plaintiff's termination, Defendants continued to apply STEPS to Plaintiff's claims.  Defendants stated that it would mediate Plaintiff's claims under STEPS.  Palefsky Decl. ¶ 2.  After the unsuccessful mediation, Defendants paid for the mediation in accordance with Step Three and informed Plaintiff that he could send a letter requesting arbitration when Plaintiff asked how to initiate the arbitration required by STEPS.  Docket No. 24 ¶ 2 ("Supp. Palefsky Decl."); Docket No. 4, Exh. B; Docket No. 4, Exh. C.  Finally, in rejecting Plaintiff's arbitration request, Defendants stated that it was denying Plaintiff's arbitration because it had "determined that none of [Plaintiff's] claims are legally viable or arbitrable under Chevron's STEPs policy."  Denial of Arbitration Demand.  Defendant did not reject arbitration on the ground that HR Policy 344 did not apply.  In short, prior to Defendants' opposition brief in the case at bar, Defendants have never once acted as if Plaintiff was not covered by HR Policy 344 or STEPS.

The Court finds that HR Policy 344 can be fairly read as applying to employees of Chevron, U.S.A., such as Plaintiff, and discretionary only as to employees of Defendants' foreign subsidiaries.  This reading of the contract is corroborated by Defendants' post-contract conduct, where Defendants consistently applied HR Policy 344 to Plaintiff until Defendants' opposition brief to Plaintiff's petition.  Thus, HR Policy 344 applies to Plaintiff's employment.

2.    Applicability of Arbitration Agreement to Plaintiff's Claims

Second, the Court must determine if HR Policy 344 encompasses the dispute at issue.  In doing so, the Court may "consider only the validity and cope of the arbitration agreement itself when addressing whether a question is arbitrable, and to avoid entanglement with the merits of the underlying claim."  *In re Van Dusen*, 654 F.3d 838, 845 (9th Cir. 2011).  Here, HR Policy 344 has limited scope, applying only to claims involving "legally protected rights."

Under HR Policy 344, "[t]he Corporate or appropriate Operating Company Law Department will make the determination if an issue involves a legally protected right."  HR Policy at 3.  Defendants argue that this provision gives Defendants the unilateral right to determine whether

United States District Court

For the Northern District of California

1  parties can arbitrate based on the viability of the claim.  However, HR Policy 344 makes no

2  reference to viability.  Instead, Step Three and Step Four allow Defendants to determine if an issue

3  involves a "legally protected right," not whether an issue involves a legally *viable* right.  HR Policy

4  at 3.

5      HR Policy 344 defines a legally protected right as "those that can be asserted in a court of

6  law."  HR Policy at 3.  HR Policy 344 enumerates complaints that are legally protected rights, such

7  as:

8          claims for discrimination, retaliation or harassment on the basis of age,
           gender, race, color, national origin, religion, disability, pregnancy, or
9          marital status, sexual orientation, veteran's status, or any other
           protected status.

10

11         Legally protected rights also include causes of action relating to
           employment or termination of employment based on claims of
12         wrongful discharge, breach of employment contract, breach of
           covenant of good faith and fair dealing, fraud, defamation and
           violation of public policy.

13

14  HR Policy at 3.  The Policy also describes types of complaints that would not be covered, such as

15  "an evaluation under the Performance Management Process (PMP) or other records documenting

16  employee performance or a work assignment based on something other than discrimination."  HR

17  Policy at 3.  Thus, the text of HR Policy 344 clearly indicates the term "legally protected right"

18  describes the *nature* of the employee's claim, not its strength on the merits.

19      In the instant case, Plaintiff brings claims for wrongful termination in violation of public

20  policy, discrimination, fraud, and breach of the covenant of good faith and fair dealing.  Each of

21  these claims are specifically listed as examples of legally protected rights in HR Policy 344's

22  covered disputes section.  HR Policy 344 at 3.  Even if HR Policy 344 were deemed ambiguous, any

23  uncertainty in the contract must again be read against Defendants, the drafters of HR Policy 344.

24  *See Taylor*, 31 Cal. 2d at 374.  Furthermore, Defendants themselves determined that Plaintiff's claim

25  involves a legally protected right when it chose to mediate Plaintiff's claims under Step Three.[2]

26  _____

27      [2]  Defendants' argument at the hearing on this matter that the mediation was not conducted
    under Step Three is contradicted by Plaintiff's declarations.  Palefsky Decl. ¶ 2 ("During August
    2009, I asked Mr. Eassa if Chevron wanted to mediate the dispute.  Mr. Eassa responded that

28  Chevron would mediate under Chevron's "STEPS" program.  I agreed that this was appropriate, and

**United States District Court**
For the Northern District of California

1    While HR 344 confers on Chevron's law department the power to determine whether the

2    claim involves a legally protected right, that determination applies to claims that fall in the gray area

3    between the specified rights that are expressly enumerated as legally protected (such as

4    discrimination or wrongful termination), and rights that are explicitly not protected, such as

5    complaints about an employee evaluation.  No such gray area pertains here.

6    Defendants contend that Plaintiff's claim is really about employee performance, which is not

7    covered by HR Policy 344.  Under HR Policy 344, Steps Three and Four are not available for "a

8    complaint about an evaluation under the Performance Management Process (PMP) or other records

9    documenting employee performance."  HR Policy at 3.  However, Plaintiff is not complaining about

10   a supervisor's performance evaluation.  Plaintiff is challenging his allegedly wrongful discharge,

11   and claims based on wrongful discharge involve legally protected rights specifically enumerated in

12   HR Policy 344.  HR Policy at 3.  As a defense to Plaintiff's claim, Defendants could bring up

13   Plaintiff's job performance to justify his termination.  This would not, however, transform Plaintiff's

14   claim for wrongful discharge into a claim merely complaining about an unfavorable performance

15   evaluation.

16   The Court finds that HR Policy 344 does not give Defendants the right to reject an arbitration

17   request based on a unilateral determination that the claim is not viable.  HR Policy 344 only permits

18   Defendants to determine if a right involves a "legally protected right," as defined by HR Policy 344.

19   As Plaintiff's claims are specifically identified by HR Policy 344's list of covered disputes, the

20   Court finds that the arbitration agreement applies to the dispute at issue.

21   ///

22   ///

23   ///

24

_____

25   as described in Step 3 of STEPS program, the parties jointly selected an outside mediator to use . . . ,
     with Chevron to pay the cost of the mediation.").  Additionally, Defendants previously stated that

26   they had rejected Plaintiff's arbitration request pursuant to STEPS.  HR Policy 344 clearly states that
     "[i]t is *mandatory* to use Step Three before proceeding to Step Four."  HR Policy at 2 (emphasis

27   added).  If the mediation was not conducted under Step Three, Plaintiff and Defendants would not
     have proceeded to seeking arbitration under Step Four and Defendants would not have rejected

28   Plaintiff's arbitration request under STEPS.

### III.   <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Plaintiff's petition to compel arbitration. The Clerk of the Court is directed to close the file in this case.

This order disposes of Docket No. 6.


IT IS SO ORDERED.


Dated:  December 1, 2011

_____
EDWARD M. CHEN
United States District Judge